VIOLRPT
(01/2005)

# United States District Court
# for The District of Massachusetts

## VIOLATION REPORT

**Name of Offender:** Michael McDonough  **Case Number:** D/VT: 2:03-CR-161-03
  D/MA: 05CR3004

**Name of Sentencing Judicial Officer:** The Honorable William K. Sessions III, Chief, U.S. District Judge; D/VT, Jurisdiction transferred to the D/MA on 1/27/05, to the Honorable Michael A. Ponsor, U.S. District Judge.

**Date of Original Sentence:** 9/13/2004

**Original Offense:** Conspiracy to Import Marijuana  **Class Felony:** C

**Original Sentence:** Time Served, 3 Years Supervised Release

**Type of Supervision:** Supervised Release  **Date Supervision Commenced:** 9/13/2004

**Assistant U.S. Attorney:** Todd Newhouse  **Defense Attorney:** Stewart T. Graham

Should the Court find that defendant **Michael McDonough** has committed the alleged violations, this Violation Report is submitted to the Court with information it will need to render an appropriate disposition on the violations contained in the Petition for Warrant/Summons (Probation Form 12C) dated **1/12/2005**.

## Part A: Original Offense, Special Conditions, Modifications

On 9/27/04, the defendant appeared in the U. S. District Court, District of Vermont, before the Honorable William K. Sessions III having plead guilty to Ct. 2: Conspiracy to Import Marijuana, 21 USC § § 963; 960 (b)(3); at which time he was sentenced to Time Served followed by three (3) years of Supervised Release. The following special conditions were imposed: The defendant shall remain confined in home, as described in U.S.S.G. § 5F1.2, for a period of three (3) months. During this time, the defendant shall remain at place of residence except for employment and other activities approved in advance by the probation officer. The defendant shall maintain a telephone at place of residence without "call forwarding", a modem, " Caller ID", "call waiting", or portable cordless telephones for the above period. At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer. The defendant shall contribute to the cost of electronic monitoring in an amount to be determined by the probation officer based on ability to pay or the availability of third party

Michael McDonough                        - 2 -                        February 24, 2005

payments; The defendant shall participate in a mental health program approved by the United States
Probation Office. The defendant shall contribute to the cost of services rendered in an amount to be
determined by the probation officer based on ability to pay or the availability of third party payment;
The defendant shall submit to search of your person, residence, office, property, or vehicle conducted
in a reasonable manner and at a reasonable time by the probation officer; The defendant is to perform
100 hours of community service during the first year of supervision at a site approved by the
probation officer; The defendant shall participate in and successfully complete the drug and alcohol
rehabilitation program sponsored by the Massachusetts Court System. Failure to do so will result in
violations of the conditions of this federal sentence.

As a result of being homeless and unemployed, on November 18, 2004, the defendant
voluntarily waived his right to a hearing and agreed to modify the conditions of supervision to
include a six (6) month placement at a community correction center/halfway house.

## Part B: Administrative Hearings - Previous Sanctions and Violations

Upon returning to the D/MA, the Probation Office learned that Mr. McDonough's mother did not
agree to allow him to reside with her. Due to his lack of adequate housing, Mr. McDonough
frequently accepted offers to stay overnight with friends and acquaintances. Mr. McDonough had
no source of transportation or money to assist him in getting back and forth to Franklin District
Court to attend drug court and as a result, he informed USPO Spier (USPO for the District of
Vermont) and Bush of his inability to report to the state probation office for drug court. USPO
Bush learned of Mr. McDonough's absences and failure to report after the state probation office
had petitioned the court for a violation of probation warrant. USPO Bush instructed Mr.
McDonough to self surrender in an effort to resolve the matter. On 11/10/04, Mr. McDonough
self surrendered to the Franklin District Court Probation Office. On 11/12/04, Franklin District
Court found Mr. McDonough in violation of the conditions of his probation and terminated his
case. On 11/18/04, Michael voluntarily signed a waiver of hearing and agreed to a modification
of the conditions of his supervision to include a six month placement in a CCC. On 11/18/04, the
petition was forwarded to the District of Vermont and the sentencing Judge, The Honorable
William K. Sessions III, approved the modification. Mr. McDonough reported for his CCC
placement on 12/3/04.

On 1/11/05, Mr. McDonough left the Watkinson House Community Corrections Center
in Hartford, Connecticut and to date, his whereabouts are unknown.

## Part C: Nature of Non-Compliance (Probation 12c and Supplements)

**Violation Number     Nature of Noncompliance**

1                        **Serve six month in a Community Treatment Center/Halfway House.**

Michael McDonough                     - 3 -                    February 24, 2005

On 11/18/04, due to a lack of transportation, employment and housing, Mr. McDonough voluntarily agreed to a modification of the conditions of supervision to include a six month placement at a Community Corrections Center (CCC)/Halfway House. On 12/3/04, Mr. McDonough commenced his term of CCC placement. On 1/11/05, USPO Bush was notified by the Watkinson House Staff that Mr. McDonough was being transferred to the Cheyney House as a result of overcrowding. Mr. McDonough was granted permission by the Probation Office and Halfway House to use his personal motor vehicle during the transfer process. Mr. McDonough agreed to follow staff member, Harold Chapman, to the Cheyney House. At 2:30 pm, Harold Chapman and Mr. McDonough left the Watkinson House en route to the Cheyney House. Mr. McDonough followed Harold Chapman for a short distance and then proceeded to drive away. The Watkinson House, believing that Mr. McDonough may have been lost, waited until 4:00 pm for Mr. McDonough to call or report. Mr. McDonough never called or reported to either house. According to the Watkinson House Staff, Mr. McDonough has been terminated from the program. As of 1/12/05 Mr. McDonough's whereabouts are unknown.

## Part D: Custodial Status on Violation

Since leaving the Watkinson House Community Corrections Center, Mr. McDonough has remained in the community. A Probation Form 12C, request for warrant, has been filed and a warrant was issued. Mr. McDonough was arrested on 2/17/05, and his initial appearance was held on 2/18/05, before Magistrate Judge Kenneth P. Neiman. During the initial hearing Mr. McDonough and his attorney waived the right to a probable cause hearing. Judge Neiman released Mr. McDonough on the existing conditions of supervision (excluding halfway house placement), ordered that Mr. McDonough limit his travel to Franklin, Hampshire and Hampden Counties and report to the Probation Office daily by phone or in person.

## Part E: Summary of Supervision (Status of Residence, Employment, Special Conditions etc)

Since commencing his term of supervised release in the District of Massachusetts, Mr. McDonough has remained unemployed, homeless, and has violated the conditions of his state and federal probation. The U.S. Probation Office has made every effort to assist Mr. McDonough in resolving the status of his state case, secure CCC placement, and assisting him in his search for employment.

To date, the Probation Office has been unable to assist Mr. McDonough with meeting the requirements of his special conditions, as the Probation Office's primary focus has been to assist Mr. McDonough in securing adequate housing.

Michael McDonough                     - 4 -                     February 24, 2005

## Part F: Sentencing Options

### Statutory Provisions

Title 18, U.S.C. § 3583(e)(3) provides for revocation of a term of supervised release if the court finds by a preponderance of the evidence that the defendant violated a condition of supervised release. Accordingly, the court shall require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision.

Title 18, U.S.C. § 3583(h) provides for a term of supervised release following revocation when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3). The length of such a term of supervised release, shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

Pursuant to Title 18, U.S.C. § 3583(e)(3), if revoked, he is facing a maximum statutory penalty of two years of incarceration.

### Policy Statement/Guideline Provisions

According to U.S.S.G. § 7B1.1, Michael McDonough's violations are classified as **Grade C violations**. The offender's **criminal history is Category III**.

This policy statement of the guidelines as set forth at the table at U.S.S.G. § 7B1.4, calls for an imprisonment range of **5 to 11 months**.

Upon a finding of a Grade C violation, pursuant to U.S.S.G. § 7B1.3(a)(2), the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision.

Pursuant to U.S.S.G. § 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B1.4, and any such unserved period of community confinement, home detention, or intermittent confinement may be converted to an equivalent period of imprisonment.

Michael McDonough                    - 5 -                    February 24, 2005

Pursuant to § 7B1.5(b), upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time served on post-release supervision.

According to § 7B1.4, Application Note #4, where the original sentence was the result of a downward departure (e.g. as a reward for substantial assistance, or a charge reduction that resulted in a sentence below the guideline range applicable to the defendant's underlying conduct, an upward departure may be warranted.

Where the minimum term of imprisonment determined under § 7B1.4 is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term.

U.S.S.G. § 7B1.3(g)(2) provides where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. For original offenses that occurred subsequent to the effective date of the Protect Act (April 30, 2003) the caps on re-imprisonment for supervised release are not aggregate. Therefore, imprisonment for violation of supervised release is not deducted from statutory jail time available, but it is deducted from the supervised release term.

Respectfully Submitted,

Walter A. Bush Jr.
U.S. Probation Officer
Date Submitted: February 24, 2005

APPROVED:

Alicia Howarth
Supervising U.S. Probation Officer
Date Reviewed: February 24, 2005

Michael McDonough                    - 6 -                    February 24, 2005

## SENTENCING RECOMMENDATION

United States v. Michael McDonough
U.S. District Court, District of Massachusetts

CONFIDENTIAL PAGE

**VIOLATION GRADE**                    C
**CRIMINAL HISTORY CATEGORY**          III

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| **CUSTODY:** | 24 Months | 5-11 Months | 5 Months |
| **PROBATION:** | N/A | N/A | N/A |
| **SUPERVISED RELEASE** | 36 Months | 36 Months less any term of custody imposed upon revocation. | No Supervised Release to Follow. |

## Justification

The Probation Office believes that Mr. McDonough initially made a sincere effort to comply with the conditions of his supervised release, however, the recommendation for a period of incarceration is made for two reasons. First, according to his pre-sentence report, Mr. McDonough has never served a term of incarceration and it appears to be an appropriate sanction at this time. Second, as evident in his long history with the state probation system, he has proven time and time again, if sentenced to probation, he can comply with the conditions of supervision and do what is required, but it has not deterred his ongoing criminal behavior.

Mr. McDonough was serving his term of federal supervision concurrent with two terms of state probation through the Franklin County District Court. The two terms of state probation were scheduled to terminate on 9/14/04 and 10/3/05. The state charges were imposed as a result of a conviction for possession of

marijuana and an OUI (operating under the influence of alcohol). The OUI occurred while on pre-trial supervision. As a result of being homeless and unemployed, Mr. McDonough violated the conditions of state probation for failure to report. As a result of the violation, the Franklin District Court Probation Office recommended finding Mr. McDonough in violation and terminating the case. This recommendation was made for the sole purpose of allowing the U.S. Probation Office to make a referral for halfway house placement to assist Mr. McDonough in securing a residence, employment and financial planning. Mr. McDonough stipulated to the violation in Franklin District Court and his term of state probation was terminated.

On 11/18/04, Mr. McDonough voluntarily agreed to modify the conditions of his supervision to include a six month term of halfway house placement. Mr. McDonough assured the U.S. Probation Office that he would successfully complete the six months without incident. On 1/11/05, just a little over a month after placement, Mr. McDonough violated the conditions of his federal supervision when he left the halfway house and failed to return. Mr. McDonough acknowledged the he violated the conditions of his supervision, contacted the Probation Office and self surrendered to resolve the matter.

The Probation Office believes that although Mr. McDonough has shown an initial effort to comply with the conditions of his supervision, the Court should not dismiss the fact that he appears to be testing the boundaries of the Court and the Probation Office. Mr. McDonough has already been given a tremendous break in that he has been found in violation of the conditions of his state probation and his term of supervision was terminated with no sanction imposed. By finding him in violation of the conditions of his federal supervision and not imposing a term of incarceration is essentially rewarding his behavior. It is inconceivable to think that by allowing Mr. McDonough to remain in the community he will change his behavior. His criminal history is proof that it has not worked in the past and the Probation Office does not believe that it will be effective in this case.

Therefore, sentencing Mr. McDonough to a period of incarceration on the lower end of the guidelines with no supervised release to follow may be just the deterrent necessary for him to make a positive change and finally break the cycle of on-going criminal conduct.

Michael McDonough                    - 8 -                    February 24, 2005

Recommendation
It is respectfully recommended that sentence in this case be
imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgement
of the court that the defendant, Michael McDonough, is hereby
committed to the custody of the Bureau of Prisons to be imprisoned
for a term of (**5**) months.

**(If a term of supervised release is imposed, the following will
apply)**

Upon release from imprisonment, the defendant shall be placed on
Supervised Release for a term of () months.   Within 72 hours of
release from Custody of the Bureau of Prisons, the defendant shall
report in person to the district to which the defendant is
released.

While on Supervised Release, the defendant shall not commit another
Federal, state or local crime. The defendant shall refrain from any
unlawful use of a controlled substance.  The defendant shall submit
to one drug test within 15 days of release from imprisonment *(OR)*
placement on probation and at least two periodic drug tests
thereafter, not to exceed 104 tests per year, as directed by the
probation officer.

In addition, the defendant shall comply with the standard
conditions that are described at U.S.S.G. §5D1.3(c) and shall
comply with the following special conditions:

The defendant is prohibited from possessing a firearm or other
dangerous weapon.

The defendant is to participate in a program for substance
abuse as directed by the United States Probation Office, which
program may include testing, not to exceed 104 drug tests per
year, to determine whether the defendant has reverted to the
use of alcohol or drugs.  The defendant shall be required to
contribute to the costs of services for such treatment based
on the ability to pay or availability of third party payment.

The defendant is not to consume any alcoholic beverages.

The defendant is to complete (**100**) hours of community service
at an agency approved by the probation officer.

Michael McDonough                    - 9 -                    February 24, 2005

The defendant is to cooperated in the collection of DNA as directed by the Probation Officer.

Respectfully Submitted

By: _Walter A. Bush Jr._
Walter A. Bush Jr.
U.S. Probation Officer

Review & Approved

Alicia Howarth
Supervising U.S. Probation Officer